The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost, the briefs on appeal and arguments of counsel. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award, except for a number of minor modifications. Accordingly, the Opinion and Award by Deputy Commissioner William C. Bost is affirmed, except for a few minor modifications.
Defendants' Motion to Dismiss plaintiff's appeal is DENIED; plaintiff's motion to change treating physicians to Dr. Raymond Sweet is ALLOWED.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the 15 February 1995 hearing as:
STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee/employer relationship existed between the named employee and the named employer on March 8, 1994.
3. Fireman's Fund is the carrier on the risk on March 8, 1994. The average weekly wage is to be determined from a Form 22 wage chart submitted by the employer.
* * * * * * * * * * *
The Full Commission adopts the Findings of Fact found by the Deputy Commissioner, with a few minor modifications, as follows:
FINDINGS OF FACT
1. Plaintiff was born on January 19, 1968. She has completed ninth grade. She worked for defendant-employer from May 1990 through March 10, 1994. Her job is depicted on a videotape that the parties stipulated into evidence. Attendance records show that during the period of January 1, 1994 through March 10, 1994, about 10 weeks, plaintiff worked an average of about 17 hours per week, anywhere from 4 to 7 1/4 hours per day. Attendance records for 1993 show that Employee worked a total of 536 hours in 1993, anywhere from 1 hour per day to one occasion when she worked 8 3/4 hours in a day. Her hours in 1993 were sporadic, and during the months of July, August, and September she only worked a total of 6 days. Attendance records for 1992 show that Employee only worked 514 hours during that year. Based in the Form 22 wage chart, plaintiff's average weekly wage as of March 8, 1994 was $95.18.
2. Plaintiff's job involved filling pillows with stuffing material blowing out of a machine, and weighing and closing the pillows. Plaintiff worked at 4 workstations. She rotated between these four positions. Plaintiff also spent a significant amount of time raking filling materials off the floor.
3. The first position involved grasping an empty pillow with the right hand, holding it over a blower nozzle with two hands while filling blew into it, and pushing it over to the next station to be weighed. The pillows varied in size from 1/2 pound to 1 pound 10 ounces to 4 pounds. The video depicts 1 pound 10 ounce pillows. In the first position these pillows are filled approximately every 10 seconds.
4. At the second station, plaintiff would weigh the pillows and add or remove filling to get a proper weight, pushing the completed pillow off the scale. The third station involved sewing the end of the pillow closed. The video showed that the 1 pound 10 ounce pillows were sown shut at a rate of about 1 every 10 seconds. The completed pillows are tossed onto a stack after one-half of one side is sewn shut.
5. The fourth and final position involves stacking 5 pillows per stack at about waist level in a tying machine. The Employee then holds the pillows down tightly while the machine wraps 2 plastic straps around the bundle. It takes about 20 seconds to take the pillows off of the floor, stack them and hold them down until the straps are completely wrapped.
6. The plaintiff contracted an occupational disease on or about March 8, 1994, as a result of her repetitive work for defendant-employer. She was unable to work because of such disability from March 14, 1994 through June 21, 1994. She initially went to Dr. Peter Van Dooren in Hickory who diagnosed bilateral carpal tunnel syndrome and referred her to Dr. Mark McGinnis at Hickory Orthopedic.
7. Dr. McGinnis diagnosed right carpal tunnel syndrome on March 11, 1994. He treated Employee with injections, prescription medicines and a right wrist splint, with restriction to limited repetitive movement with 20 pounds lifting, no heavy pushing, grasping or pulling.
8. Dr. McGinnis diagnosed bilateral carpal tunnel syndrome on March 18, 1994. He continued to treat Employee conservatively. Nerve conduction studies showed evidence of bilateral carpal tunnel syndrome with the right side being severe and the left side mild to moderate. Plaintiff underwent a right CT release on April 27, 1994, and continued to have physical findings consistent with right cubital tunnel syndrome and right radial tunnel syndrome. On or about August 27, 1994, plaintiff underwent decompression of the ulnar nerve and radial nerve at the right elbow. Dr. McGinnis then performed a left carpal tunnel release and left ulnar nerve anterior subcutaneous transposition at the elbow on December 28, 1994. Dr. McGinnis saw plaintiff for follow-up through April 7, 1995. She continued to have tenderness to palpitation along the course of the median nerve proximal to the pronator in the right forearm.
9. The Full Commission finds that plaintiff's employment with defendant-employer placed plaintiff at an increased risk of the development of occupational disease in the upper extremities and that she contracted such occupational disease as a result of her employment with defendant employer.
10. Plaintiff was seen at the request of defendants by Dr. Stephen Naso, a hand surgery specialist, on February 14, 1995. Dr. Naso also viewed the video that was submitted into evidence. Dr. Naso testified that the pillow stuffing job created a greater risk of causing or aggravating carpal tunnel syndrome than members of the general public that did not perform that type of work.
12. Stipulated records of the Employment Security Commission indicate that plaintiff received 8 weeks of unemployment benefits in the amount of $93.00 per week for a total amount of $744.00 for the benefit weeks March 19, 1994 through May 7, 1994.
13. Plaintiff went to work as a dancer at a club called Emerson's near Hickory on or about June 22, 1994. According to check stubs, plaintiff earned about $2,550.00 between June 22, 1994 and December 27, 1994 in this job. According to tax forms, she earned $3,060.00 in 1994 from the dancing job. Plaintiff continued to work at this job as a dancer through the time of the hearing. She testified that her arms bothered her when dancing, and "lots of times" she had to leave the club early before her shift ended because of her arm pain, which made her nauseated.
14. The plaintiff's average weekly wage at Emerson's was $113.33, which was more than her average weekly wage at the Defendant.
15. Witness Elaine Harrison, who works for the Defendant stated that the plaintiff still is on payroll and had not been fired to her knowledge.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant-employer placed plaintiff at an increased risk of the development of occupational disease in the upper extremities and she contracted such occupational disease as a result of her employment with defendant employer. N.C.G.S. § 97-53.(13).
2. As a result of her occupational disease, plaintiff was temporarily and totally disabled from March 14, 1994 until June 21, 1994, and is therefore entitled to benefits at the rate of $63.46 per week during the period from March 14, 1994 until June 21, 1994. N.C.G.S. § 97-29
3. Defendant is entitled to a credit in the amount of $744.00 for the employment security benefits paid to the Plaintiff at the rate of $93.00 per week for the eight week period from March 19, 1994 through May 7, 1994.
4. As a result of plaintiff's occupational disease, plaintiff is not entitled to temporary partial disability compensation after June 21, 1994 as her average weekly wage with her subsequent employer, Emerson's, was more than her average weekly wage with the defendant. N.C.G.S. § 97-30.
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of Deputy Commissioner Bost and enters the following:
AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $63.46 from March 14, 1994, through June 21, 1994 subject to a week for week credit for employment security benefits previously paid. This compensation shall be paid to plaintiff in a lump sum, subject to an attorney fee hereinafter approved.
2. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for the plaintiff's counsel which fee shall be deducted from the aforesaid Award and paid directly to plaintiff's counsel.
3. Defendant shall pay all medical bills incurred by or to be incurred by plaintiff for treatment of her occupational disease.
4. Plaintiff shall be entitled to a change of physician to Dr. Raymond Sweet and Defendants shall pay the costs of treatment by Dr. Sweet in accordance with the Commission's fee schedule.
5. Defendants shall pay the costs.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ DIANNE C. SELLERS COMMISSIONER